UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VERNA G. HENSLEY,                               Case No. 10-11960

        Plaintiff,                        George Caram Steeh
vs.                                             United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                Michael Hluchaniuk
                                                United States Magistrate Judge

        Defendant.

_____/

**REPORT AND RECOMMENDATION**
**CROSS MOTIONS FOR SUMMARY JUDGMENT (Dkt. 10, 13)**

## I.  PROCEDURAL HISTORY

### A.  Proceedings in this Court

On May 14, 2010, plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant

to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge George

Caram Steeh referred this matter to the undersigned for the purpose of reviewing

the Commissioner's decision denying plaintiff's claim for a period of disability,

disability insurance, and supplemental security income benefits.  (Dkt. 2).  This

matter is before the Court on cross-motions for summary judgment.  (Dkt. 10, 13).

### B.  Administrative Proceedings

Plaintiff filed the instant claims on April 22, 2006, alleging that she became

unable to work on October 10, 2002.  (Dkt. 6, Tr. at 69, 74).  Plaintiff was insured

through December 31, 2007.  (Dkt. 6-2, Pg ID 34).  The claim was initially

disapproved by the Commissioner on June 13, 2006.  (Dkt. 6, Tr. at 47-55).

Plaintiff requested a hearing and on July 23, 2008, plaintiff appeared with counsel

before Administrative Law Judge (ALJ) Daniel G. Heely, who considered the case

*de novo*.  In a decision dated August 25, 2008, the ALJ found that plaintiff was not

disabled.  (Dkt. 6, Tr. at 6-16).  Plaintiff requested a review of this decision.  (Dkt.

6, Tr. at 5).  The ALJ's decision became the final decision of the Commissioner

when, after the review of additional exhibits[1] (AC- 9E, Dkt. 6, Tr. at 4), the

Appeals Council, on March 24, 2010, denied plaintiff's request for review.  (Dkt.

6, Tr. at 1-4).

    For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion

for summary judgment be **DENIED**, that the findings of the Commissioner be

---

    [1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.  In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

**REVERSED**, and that this matter be **REMANDED** for further proceedings.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was 59 years of age at the time of the most recent administrative

hearing.  (Dkt. 6, Tr. at 15, 69).  Plaintiff's relevant work history included

approximately eight years as a cashier and assistant manager.  (Dkt. 6, Tr. at 98).

In denying plaintiff's claims, defendant Commissioner considered progressive

arthritis in back and spine, incontinence, and migraine headaches  as possible

bases of disability.  (Dkt. 6, Tr. 97)*.*

The ALJ applied the five-step disability analysis to plaintiff's claim and

found at step one that plaintiff had not engaged in substantial gainful activity since

October 10, 2002.  (Dkt. 6, Tr. at 11).  At step two, the ALJ found that plaintiff's

back impairment was "severe" within the meaning of the second sequential step.

*Id*.  At step three, the ALJ found no evidence that plaintiff's combination of

impairments met or equaled one of the listings in the regulations.  *Id.*  At step four,

the ALJ found that plaintiff could perform her previous work as a cashier

supervisor and a grocery clerk.  (Dkt. 6, Tr. at 14).  The ALJ made an alternative

finding at step five that plaintiff could perform a significant number of jobs

available in the national economy.  (Dkt. 6, Tr. at 15).

Report and Recommendation
Cross-Motions for Summary Judgment
*Hensley v. Comm'r*; Case No.10-11960

B.    Plaintiff's Claims of Error

According to plaintiff, the ALJ's finding regarding her functional capacity is in error and the hearing decision denying her application for Disability Benefits should be reversed.  In reaching his decision that plaintiff is not disabled, the ALJ found that she could perform a full range of medium work.  He concluded that plaintiff, 54 years old at her alleged onset date, could lift 50 pounds occasionally and 25 pounds frequently.  In addition, he found that she could sit, stand and/or walk for about six hours each in an eight-hour workday.  (Tr. 12).  According to plaintiff, the ALJ's determination is inconsistent with objective evidence provided by plaintiff's treating physician and her self-reported limitations and is unreasonable when looking at the medical records as a whole.

Plaintiff's treating physician, Dr. Kutas stated that Hensley had "significant limitations" and limited her with restrictions equal to sedentary work at most.  (Tr. 167-168).  However, the ALJ discounted the treating doctor's statements because "it is not supported by the treatment record" and "the claimant has not required significant ongoing treatment for her back pain, and the doctor has not offered care other than medication."  (Tr. 14).  According to plaintiff, this statement by the ALJ is unsupported and unreasonable because the consultative evaluation performed by Dr. Kahn on June 3, 2006 confirms the treating doctor's opinion and does not as the ALJ states, contradict it.  He concludes that plaintiff has arthritis in

her back and can only walk for only 10-15 minutes after which she needs to sit

down.  Additionally, he states that she is only able to lift a gallon of milk, which is

less than 10 pounds.  He also states that there is diminished range in plaintiff's

lumbar spine.  (Tr. 136, 140).  According to plaintiff, Dr. Kahn's evaluation report

supports the opinion and restrictions of the treating doctor and is contrary to the

ALJ's findings of full range medium work.

Plaintiff also argues that the opinion of her treating physician is consistent

with and supported by the xrays taken on November 23, 2007.  The x-rays

revealed "mild degenerative changes in the hip joints with mild joint space

narrowing, subchondral sclerosis and osteophytosis."  It also mentioned "mild

degenerative changes in the sacroiliac joints in the lower lumbar spine."

Plaintiff's lumbar spine x-ray revealed "multilevel anterior lumbar osteophytes."

It also showed "moderate disk space narrowing at L3-L4, L4-L5, and L5-S1," and

"endplate sclerosis at L5-S1 with facet hyperthrophy at L4-L5 and L5-S1.  There

was also mild anterior wedging of L3 and L4.  (Tr. 178-179).  According to

plaintiff, these detailed findings by the radiologist are also directly in support of

the treating doctor's restrictions and diagnoses.

Plaintiff contends that the ALJ essentially skims over these findings.  When

he mentions the 2007 x-rays he merely states that these x-rays "revealed mild to

moderate changes without convincing evidence of acute fracture or dislocation."

(Tr. 13).  According to plaintiff, these detailed x-ray findings reveal significant back complications and contradict the ALJ's findings of medium work.  The detailed findings support the treating physician's opinion of consistent and radiating pain that limits plaintiff to sedentary work at most.  Indeed, the only substantial evidence is that of Dr. Kutas and Dr. Kahn who both agree that plaintiff is restricted to sedentary work.  According to plaintiff, Dr. Kahn concluded that she could stand, walk, or sit for only 10-15 minutes and only lift a gallon of milk.  Dr. Kutas stated that plaintiff had "significant limitations" and also limited her with restrictions equal to sedentary work at most.  (Tr. 167-168).

Additionally, plaintiff argues that in the ALJ's hearing transcript there is no evidence that plaintiff has any skills that transfer to sedentary work.  Rather, the ALJ only made findings of skills that transfer to other medium jobs.  (Tr. 15, 16).  Accordingly, plaintiff asserts that she should be deemed disabled under sedentary grid rules 201.12 or 201.14.

###### C.    The Commissioner's Motion for Summary Judgment

Plaintiff's primary challenge centers on the assumption that the ALJ did not properly evaluate Dr. Kutas's September 2007 opinion, which restricted plaintiff to sedentary work at best.  (Tr. 167-68).  Accordingly, this argument should be rejected.  As an initial matter, although Dr. Kutas stated that plaintiff should be considered "totally disabled" if there were no jobs available that accommodated

the restrictions in her opinion (Tr. 168), the determination of disability is reserved to the Commissioner, and an opinion about whether someone is disabled is not a medical opinion entitled to controlling weight.  As for the rest of Dr. Kutas's opinion, the Commissioner argues that the ALJ reasonably disagreed with such extreme conclusions, finding no evidence that plaintiff was limited to performing sedentary work.  (Tr. 14).  The ALJ reasoned that Dr. Kutas's opinion, that plaintiff's pain was worsened by prolonged standing or sitting, as well as lifting over 10 pounds, was not supported by the treatment record.  (Tr. 14).  According to the Commissioner, there is nothing in Dr. Kutas's progress notes or in the opinion itself to substantiate such a rationale.  Specifically, on examination in November 2007, Dr. Kutas noted some tenderness to palpation in the back but otherwise no focal reproducible back pain.  (Tr. 168).  Straight leg raising test was negative for radiculopathy.  (Tr. 168).  Plaintiff exhibited intact strength and nearly full range of motion in the hips bilaterally.  (Tr. 168).  Moreover, as the ALJ found, these limitations were not corroborated by plaintiff's treatment history (Tr. 14).  The ALJ noted that plaintiff's back pain did not require significant, ongoing treatment, and she was offered no treatment mode other than medication (ibuprofen and Flexeril).  (Tr. 13, 14, 41).  Plaintiff declined to receive more aggressive treatments such as epidural injections.  (Tr. 168).

The Commissioner also urges the Court to reject plaintiff's argument that

the consultative examiner Dr. Khan's findings from June 2006 supported Dr. Kutas's opinion. According to the Commissioner, plaintiff cites to Dr. Khan's notes about plaintiff's subjective complaints of pain, which were in no manner objective medical findings. (Tr. 136). And, as the ALJ correctly pointed out, examination revealed normal findings other than reduced range of motion in the lumbar spine. (Tr. 137). Dr. Khan noted no muscle atrophy, and observed normal motor strength and negative straight leg raise, as well as steady and stable gait. (Tr. 140). In June 2006, Dr. Khan also noted that a prior computerized tomography (CT) scan of the head was negative. (Tr. 136). Thus, according to the Commissioner, these mild to normal objective examination findings are not consistent with the extreme limitations in Dr. Kutas's opinion, and instead bolster the ALJ's conclusions.

Plaintiff points to the November 2007 x-ray studies, which indicated only mild degenerative changes in the hips and lumbar spine (Tr. 178) and argues that these findings supported an RFC for sedentary, not medium, work. But, according to the Commissioner, plaintiff provides no explanation of how such mild degenerative changes are consistent with Dr. Kutas's extreme limitations. Specifically, she points to no medical source who opined that the x-ray studies supported such limitations. The Commissioner also argues that, for this reason, the ALJ correctly determined that greater weight should be given to the opinion of

state reviewing physician Tammy Nguyen, who reviewed the medical evidence and opined that plaintiff could lift/carry up to 50 pounds occasionally and up to 25 pounds frequently, stand/walk up to 6 hours in an 8-hour workday, sit for up to 6 hours in an 8-hour workday, and push/pull without limitation. (Tr. 14, 146). Dr. Nguyen correctly noted that plaintiff's consultative examination revealed no serious functional limitations, and that over-the-counter medications relieved both the headaches and back pain. (Tr. 148). Thus, the ALJ reasonably assigned greater weight to this well-supported opinion.

To the extent plaintiff raised credible allegations, the Commissioner contends that the ALJ accommodated them by limiting plaintiff to medium work. (Tr. 22). At the administrative hearing, the ALJ asked the vocational expert whether any jobs existed for an individual of plaintiff's age, education, and previous work experience who was limited to performing medium work. (Tr. 43). The vocational expert testified that such individual could perform plaintiff's past work. (Tr. 43). That testimony constituted substantial evidence to support the ALJ's step four, therefore, this Court should affirm the Commissioner's decision finding plaintiff not disabled. The Commissioner also argues that the ALJ's alternative step 5 finding, and the VE's testimony identifying other jobs in the regional economy that such an individual could perform: retail sales (82,000 statewide jobs); warehouse worker (19,000 jobs); and industrial cleaner (41,900

jobs), constituted substantial evidence to support that finding.  (Tr. 43).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq.*).   Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a
continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R.

§ 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.

> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.

> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.

> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.

> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.      Analysis and Conclusion

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole.  20 C.F.R. § 404.1527(d)(2)-(6).  Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time.  20 C.F.R. § 404.1527(d)(1)-(2).  A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight."  Soc.Sec.R. 96-2p, 1996 WL 374188, *5 (1996).  The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record."  *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2).  A physician qualifies as a treating source if the claimant sees her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical

condition."  20 C.F.R. § 404.1502.  "Although the ALJ is not bound by a treating

physician's opinion, 'he must set forth the reasons for rejecting the opinion in his

decision.'"  *Dent v. Astrue*, 2008 WL 822078, *16 (W.D. Tenn. 2008) (citation

omitted).  "Claimants are entitled to receive good reasons for the weight accorded

their treating sources independent of their substantive right to receive disability

benefits."  *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007).  "The

opinion of a non-examining physician, on the other hand, 'is entitled to little

weight if it is contrary to the opinion of the claimant's treating physician.'"

*Adams v. Massanari*, 55 Fed.Appx. 279, 284 (6th Cir. 2003).  Courts have

remanded the Commissioner's decisions when they have failed to articulate "good

reasons" for not crediting the opinion of a treating source, as § 1527(d)(2)

requires.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2000), citing,

*Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to

remand when the Commissioner has not provided 'good reasons' for the weight

given to a treating physician's opinion and we will continue remanding when we

encounter opinions from ALJ's that do not comprehensively set forth the reasons

for the weight assigned to a treating physician's opinion.").

    In the view of the undersigned, the ALJ gave sufficiently good reasons for

not giving plaintiff's treating physician's opinions controlling weight.  On

September 28, 2007, Dr. Kutas prepared an opinion at the request of plaintiff's

lawyer regarding her disability for back pain.  While the fact that the opinion was prepared at the request of a lawyer is not significant, Dr. Kutas' notation that plaintiff was "aware that this is actually the first that I have heard of this other than [her] reference of having arthritis in the past" shows that the opinions given on that date were not based on any earlier treatment.  (Tr. 167).  Moreover, it is clear that, at least on that particular date, Dr. Kutas appeared to be offering an opinion of plaintiff's limitations based, essentially, on a single examination, no treatment history for this particular issue, and no test results.

While plaintiff argues that the November 2007 xray results support Dr. Kutas' opinions, nothing in the record connects the results of plaintiff's xrays to the findings she made before the xrays were taken.  Plaintiff essentially argues that given the results of the xrays, she *must* be limited to sedentary work.  Simply because plaintiff suffers from a certain condition or carries a certain diagnoses does not equate to disability or a particular RFC.  Rather, the residual functional capacity circumscribes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities."  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002).  "A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other."  *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480,

*5 (E.D. Mich. 2004).  "The regulations recognize that individuals who have the same severe impairment may have different [residual functional capacities] depending on their other impairments, pain, and other symptoms."  *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed.Appx. 425, 429 (6th Cir. 2007); 20 C.F.R. § 404.1545(e).  Thus, the mere existence of any condition from which plaintiff may have suffered, as found on the 2007 xray, does not necessarily establish any functional limitation or disability before the last date insured of December 31, 2007, let alone going back to 2002, when she claims she became disabled.

Plaintiff's reliance on the medical consultant's opinion from June 3, 2006 to support Dr. Kutas's opinion is equally unpersuasive.  Dr. Khan offers no opinion regarding plaintiff's functional limitations at all.  Rather, he conducted an examination, noted the results and noted plaintiff's history, including the claims she made regarding her own limitations.  However, nothing in Dr. Khan's report makes any findings regarding how much plaintiff can lift or how long she sits or stand.  (Tr. 136-140).  Rather, his only findings were that plaintiff had a diminished range of motion in her lumbar spine, normal motor strength, a negative straight leg raise, and a steady and stable gait.  (Tr. at 140).  In the view of the undersigned, nothing in Dr. Khan's report suggests that he found anything to support Dr. Kutas' limitations.

The undersigned disagrees with the Commissioner that the ALJ

appropriately relied on the consulting opinion of Tammy Nguyen, who reviewed the medical evidence and opined that plaintiff could lift/carry up to 50 pounds occasionally and up to 25 pounds frequently, stand/walk up to 6 hours in an 8-hour workday, sit for up to 6 hours in an 8-hour workday, and push/pull without limitation. (Tr. 14, 146). While the Commissioner indicates that Ms. Nguyen is a physician, it appears that she is a non-physician "single decision maker" or SDM. The Programs Operations Manual System (POMS) requires it to "be clear to the appeal-level adjudicator when the SSA–4734–BK [the PRFC assessment form] was completed by an SDM because SDM-completed forms are not opinion evidence at the appeal levels." POMS DI § 24510.05. Here, the form was clear that Ms. Nguyen was an SDM, the ALJ clearly believed that she was a physician, given that he expressly relied on her opinion when he stated that the "DDS physician concluded that the claimant would be able to perform medium work." After citing extensively to this opinion, the ALJ referred to Exhibit 4F, which is Ms. Nguyen's RFC assessment. (Tr. 14). The ALJ gave "great weight" to this assessment. *Id*.

Unlike the case of *Northern v. Astrue*, 2011 WL 720763, *5 (E.D. Ky. 2011), there are no other opinions by physicians, consulting or examining, who adopted the opinion of the SDM. In *Northern*, the court concluded that a similar error was harmless because the SDM assessment was affirmed and adopted by a

second state agency consultant and physician.  In this case, no such "confirming"
assessment is contained in the record.  Moreover, while plaintiff did not raise this
error, the undersigned is especially troubled by it because no physician, treating or
consulting, offered any opinion regarding plaintiff's limitations after her 2007
xray results.  Thus, while the undersigned finds that the ALJ properly concluded
that Dr. Kutas' opinion was not entitled to controlling weight and that Dr. Khan's
report did not support Dr. Kutas' opinion, there is simply no treating, consulting,
reviewing, or examining opinion in the record that contradicts Dr. Kutas' opinion.
*See Moore v. Astrue*, 2008 WL 4400685 (E.D. Ky. 2008) (remanding for further
consideration because the treating physician's opinion regarding the plaintiff's
physical restrictions was "completely uncontradicted by any treating, examining,
or reviewing source" given that the functional assessments were either unsigned
and undated or completed by an SDM).  For this reason, the ALJ's error in so
heavily relying Ms. Nguyen's opinion requires a remand for a redetermination of
plaintiff's residual functional capacity.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that
plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion
for summary judgment be **DENIED**, that the findings of the Commissioner be

**REVERSED**, and that this matter be **REMANDED** for further proceedings.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date:  August 23, 2011                          s/Michael Hluchaniuk
                                                Michael Hluchaniuk
                                                United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on August 23, 2011, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Kevin P. Kales, William L. Woodard, AUSA, and the Commissioner of Social Security.

                                                s/Darlene Chubb
                                                Judicial Assistant
                                                (810) 341-7850
                                                darlene_chubb@mied.uscourts.gov

Report and Recommendation
Cross-Motions for Summary Judgment
*Hensley v. Comm'r*; Case No.10-11960